UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE HUG, on her own behalf and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 4:14CV00138 ERW |
| AMERICAN TRAFFIC SOLUTIONS, INC., | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiff Stephanie Hug's Motion to Remand [ECF No. 15].

**I.  BACKGROUND**

On December 20, 2013, Plaintiff Stephanie Hug, on her own behalf and on behalf of all others similarly situated (collectively, Plaintiffs) filed the First Amended Class Action Petition (Petition) in the Circuit Court for the City of St. Louis, Missouri. The Petition states Defendant American Traffic Solutions, Inc. contracted with the City of St. Louis (City) to aid enforcement of City Ordinance 66868, codified at St. Louis City, Mo., Rev. Code § 17.07.010 et seq. (Ordinance). Enacted in 2005, the Ordinance authorizes installation and use of traffic cameras to detect certain red light traffic violations. The Petition defines a "Class" of Plaintiffs as all persons "accused" of a red light violation based upon a red light camera in the City. ECF No. 1-2 at ¶ 35. It further defines a "Sub-Class" of Plaintiffs as all persons who paid fines as a result of accusations arising out of a red light camera. ECF No. 1-2 at ¶ 36. Collectively, Plaintiffs allege

the red light Ordinance impermissibly places the burden on the accused to rebut a presumption of guilt, which is ultimately based on the registered owner of the vehicle, rather than the driver. Plaintiffs claim, by contracting with the City to help enforce the Ordinance, Defendant violated Article I, Section 10 of the Missouri Constitution and the Missouri Merchandising Practices Act. Plaintiffs also assert a claim for unjust enrichment. They seek damages, disgorgement of Defendant's allegedly illicit revenues, a declaration that the Ordinance is unconstitutional and void, and an injunction prohibiting Defendant from providing the contested services in the future.

On January 23, 2014, Defendant removed the Petition to this Court pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453. Plaintiffs now move to remand, arguing Defendant has failed to show the requisite amount in controversy by a preponderance of the evidence.

## II. STANDARD

Under the Class Action Fairness Act (CAFA), federal district courts have original jurisdiction over class actions with more than 100 members, minimal diversity, and an amount in controversy exceeding 5,000,000 dollars. *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013) (citing 28 U.S.C. § 1332(d)(2), (d)(5)(B)). "To 'determine whether the matter in controversy' exceeds that sum, 'the claims of the individual class members shall be aggregated.'" *Id.* (quoting 28 U.S.C. § 1332(d)(6)). The term "class members" includes "persons (named or unnamed) who fall within the definition of the *proposed* or certified class." *Id.* (emphasis in original) (quoting 28 U.S.C. § 1332(d)(1)(D)).

"A party seeking to remove under CAFA must establish the amount in controversy by a preponderance of the evidence regardless of whether the complaint alleges an amount below the jurisdictional minimum." *Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935, 944 (8th Cir. 2012). In

some situations, the amount in controversy requirement may be satisfied simply by the allegations in the complaint. *Id.* at 946 ("Therefore, looking at the face of the complaint alone, we hold that Chicago Title has satisfied its burden of proving the jurisdictional amount by a preponderance of the evidence[.]"). "Once the removing party has established by a preponderance of the evidence that the jurisdictional minimum is satisfied, remand is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount." *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009).

## III. DISCUSSION

The sole disputed issue is whether Defendant has met CAFA's amount in controversy requirement. Defendant contends the amount in controversy exceeds 5,000,000 dollars, based on the face of the Petition and on the declaration of Damon Cross, Defendant's Senior Account Manager. Defendant argues, in assessing the amount in controversy, the Court should consider the value of punitive damages, attorney fees, and injunctive relief sought by Plaintiffs.

Plaintiffs claim Defendant has only speculated as to the amount in controversy. They maintain Defendant has failed to offer any evidence, beyond unsupported speculation, of its suggestion that punitive damages and attorney fees would drive the amount in controversy over 5,000,000 dollars. Finally, Plaintiffs state the Court should not consider the value of injunctive and declaratory relief, because such relief is contingent upon future red light violations, and because other courts have already enjoined enforcement of the Ordinance, or ordinances substantially similar to it.

The Court concludes Defendant has demonstrated the required amount in controversy by a preponderance of the evidence. Based on the face of the Petition alone, Plaintiffs' allegations

clearly assert an amount in controversy exceeding 5,000,000 dollars.[1]  Specifically, Plaintiffs assert a 100-dollar fine was typically assessed against those accused of red light violations.  ECF No. 1-2 at ¶ 27.  Additionally, they state the Class and Sub-Class collectively contain "thousands" of members, and the Sub-Class contains "[a]ll" persons who paid fines for violating the Ordinance.  ECF No. 1-2 at ¶¶ 36, 44.  Plaintiffs contend Defendant "issued several thousand red light camera violations per month."  ECF No. 1-2 at ¶¶ 37.  In its Notice of Removal, Defendant posits a hypothetical to show the amount in controversy would be met, even when construing Plaintiffs' allegations conservatively.  *See* ECF No. 1 at ¶ 21.  That is, assuming Defendant issued 2,000 violations per month,[2] and only half of those violations resulted in payment of the 100-dollar fine, the amount in controversy would still be 6,000,000 dollars[3] for the most recent five years of the Ordinance's enforcement.[4]

The Court is not persuaded by Plaintiffs' argument that Defendant's hypothetical is speculative and insufficient to warrant jurisdiction.  In fact, in *Hartis v. Chicago Title Insurance Company*, the Eighth Circuit engaged in a similar analysis to conclude the removing party met CAFA's amount in controversy requirement.  694 F.3d 935, 944-46 (8th Cir. 2012).  There, the plaintiff-class of consumers sought to recover against the defendant-title insurance company for allegedly overcharging for recording fees in "many" transactions.  *Id.* at 939, 945.  In assessing the amount in controversy, the Eighth Circuit first noted the average amount allegedly

---

[1] The Petition seeks damages exceeding 25,000 dollars, but less than 5,000,000; as Defendant notes, this is not dispositive.  *Standard Fire Ins.*, 133 S. Ct. at 1348-49.
[2] This number is particularly conservative, given Plaintiffs allege Defendant issued "several thousand" violations per month.
[3] Defendant arrived at this conclusion by multiplying 1,000 violations per month, by 100 dollars per violation, by the most recent 60 months of the Ordinance's enforcement.
[4] Notably, the Petition does not limit recovery to the most recent five years; rather the Class and Sub-Class refer to "[a]ll" persons affected by the Ordinance, which was enacted in 2005.  ECF No. 1-2 at ¶¶ 35-36.

overcharged was 12 dollars. *Id.* at 945. Additionally, the plaintiff-class alleged the defendant engaged in transactions in 17 states total; in Missouri alone, the defendant engaged in 71,000 transactions. *Id.* The court used the Missouri data to estimate the defendant engaged in a total of 1,207,000[5] relevant transactions. *Id.* at 945-46. Given the plaintiff-class alleged "many" of the total transactions involved overcharged fees, the Eighth Circuit posited that, even construing the term "many" as "one-half," the amount in controversy would be 7,242,000 dollars.[6] *Id.* The court concluded, "by looking at the face of the complaint alone," the defendant had met its burden in showing the jurisdictional amount. *Id.* at 946.

In light of *Hartis*, the Court finds Defendant's hypothetical compelling. The Court need not, however, rely solely on the calculations set forth above, because the declaration of Damon Cross, Defendant's Senior Account Manager, provides ample support for Defendant's position. In his declaration, Cross states, from January 1, 2009 through December 31, 2013, the City issued over 280,000 violation notices, which were paid in full or in part, based on automated traffic control systems. Given the standard fee of 100 dollars per violation, the amount in controversy would be as much as 28,000,000 dollars. Even if only half of the fees were paid, the amount in controversy would be 14,000,000 dollars. Moreover, looking beyond this five-year sample period, Cross avers the City issued over 351,000 violation notices, paid in full or in part, from May 2007 through February 28, 2014. This could set the amount in controversy as high as 35,000,000 dollars.

These numbers do not take into consideration amounts paid to Defendant by the City for services provided. In his declaration, Cross explains, "No fee is paid by the City to ATS if the

---

[5] The court arrived at this number by multiplying the 71,000 Missouri transactions by 17 total states. *Id.* at 945-946.
[6] The court arrived at this figure by multiplying 603,500 (half of the 1,207,000 transactions) by 12 dollars per transaction.

recipient of a violation notice does not pay the fine or if a violation notice is dismissed." ECF No. 23-1 at ¶ 3. According to Cross, in the five-year period from January 2009 through December 2013, the City paid Defendant over 8,900,000 dollars. This five-year sample alone satisfies the amount in controversy requirement.

Plaintiffs reject Defendant's arguments and Cross's statements as inconclusive. For example, Plaintiffs attack the 8,900,000 dollars paid to Defendant by the City; they argue, "The methodology and source of payment are critically important, . . . because it is not a foregone conclusion that every dollar collected by Defendant is necessarily an element of the damages payable to [Plaintiffs]." ECF No. 30 at 3. Likewise, they note nothing in Cross's declaration establishes the violation fees were paid in full or otherwise conclusively satisfy the amount in controversy requirement.

The Court is not convinced. To adopt Plaintiffs' position would be tantamount to imposing upon Defendant a clear and convincing – or even higher – burden of proof. Instead, Defendant need only establish the amount in controversy by a preponderance of the evidence. "Under the preponderance standard, the jurisdictional fact is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are." *Bell*, 557 F.3d at 959 (emphasis in original and internal quotations omitted); *Raskas v. Johnson & Johnson*, 719 F.3d 884, 887 (8th Cir. 2013) (rejecting argument that amount in controversy requirement was not met because removing party's calculations were over-inclusive). Here, the Court has no trouble concluding Defendant has met this burden. Because the Court concludes Defendant has met its burden based on the face of the Petition and Cross's declaration, the Court

need not address the parties' arguments regarding punitive damages, attorney fees, and injunctive relief.[7]

After Defendant establishes the requisite amount in controversy by a preponderance of the evidence, Plaintiffs bear the burden of showing to a legal certainty that the claim was for less than the jurisdictional amount. *Hartis*, 694 F.3d at 946. "Nowhere in [Plaintiffs'] briefs do they attempt to establish to a legal certainty that their claim is for less than the requisite amount." *Id.* Therefore, Plaintiffs' Motion will be denied.

## IV. NOTE ON DIVERSITY OF CITIZENSHIP

As courts of limited jurisdiction, federal courts are obligated to consider the issue of subject matter jurisdiction *sua sponte*. *Barclay Square Props. V. Midwest Fed. Sav. & Loan Ass'n of Minneapolis*, 893 F.2d 968, 969 (8th Cir. 2011); *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 764 n.2 (8th Cir. 2001). Here, the Court notes neither the Petition nor the Notice of Removal alleges the citizenship of Plaintiff Stephanie Hug. Rather, both pleadings state she is a resident of Missouri. ECF No. 1 at ¶¶ 5, 16, 28; ECF No. 1-2 at ¶ 4. "An averment of residence is not the equivalent of an averment of citizenship, for the purposes of jurisdiction in the courts of the United States." *Texaco-Cities Serv. Pipe Line Co. v. Aetna Cas. & Sur. Co.*, 283 F.2d 144, 145 (8th Cir. 1960).

Under 28 U.S.C. § 1653, "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." In fact, "[a]llegations of jurisdiction which are defective

---

[7] That said, the Court notes all three of these categories may be properly considerable by the Court, and therefore provide further support for Defendant's arguments. *See OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 348 (8th Cir. 2007) (explaining punitive damages may be considered in determining amount in controversy); *Hartis v. Chi. Title Ins. Co.*, 656 F.3d 778, 781-82 (8th Cir. 2009) (explaining statutory attorney fees may be considered in determining amount in controversy); *Toller v. Sagamore Ins. Co.*, 558 F. Supp. 2d 924, 930-31 (E.D. Ark. 2008) (explaining injunctive relief should be valued to determine amount in controversy).

should be discovered and corrected in the District Court." *Aetna Cas. & Sur. Co.*, 283 F.2d at 145. Therefore, although the Motion to Remand will be denied, Defendant must amend its Notice of Removal to properly aver citizenship, rather than state of residence. *See, e.g.*, *McEntire v. Kmart Corp.*, No. CIV 09-0567 JB/LAM, 2010 WL 553443, at *13 (D.N.M. July 23, 2010) (ordering removing party to amend notice of removal to reflect state citizenship, not state of residence).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Stephanie Hug's Motion to Remand [ECF No. 15] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant American Traffic Solutions, Inc. shall, within ten days of the issuance of this Memorandum and Order, amend its Notice of Removal to properly allege the parties' citizenship.

Dated this  29th  Day of April, 2014.

                                              E. RICHARD WEBBER
                                              SENIOR UNITED STATES DISTRICT JUDGE